# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DARRELL ROGERS,

                Plaintiff,

v.

CHRISTOPHER MANTHEI,
WARDEN FOSTER, TONIA MOON,
JAMES MUENCHOW, CPT. BAUER,
LT. IMMERFALL, and DOUGLAS
PERCY,

                Defendants.

Case No. 22-CV-66-JPS

**ORDER**

      Plaintiff Darrell Rogers, an inmate confined at Waupun Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. On October 14, 2022, Plaintiff filed a motion for the complaint to be screened. ECF No. 10. This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee, screens his complaint, and moots the motion for screening.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On March 1, 2022, the Court ordered Plaintiff to pay an initial partial filing fee of $219.23. ECF No. 7. Plaintiff paid that fee on March 15, 2022. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

## 2. SCREENING THE COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff alleges that on January 28, 2019, Defendant Manthei ("Manthei") approached him while he was working. ECF No. 1 at 3. Manthei asked him to clean the staff eating area and bathrooms; this was not Plaintiff's job or the job of any other inmate. *Id.* Plaintiff cleaned the eating area and one of the two bathrooms. *Id.* Plaintiff then went into the food-service administrator's office to inform her the other bathroom was filthy. *Id.* Plaintiff stated that he would go and finish the rest of his daily job duties. *Id.* Manthei asked if he was not going to finish cleaning the bathroom. *Id.* at 3-4. Plaintiff responded that he stood firm in his position. *Id.* at 4. Manthei responded that Plaintiff was refusing to work so he "could go change out." *Id.* Plaintiff again said he would finish his job duties. *Id.* Manthei sent Plaintiff back to his cell. *Id.*

Plaintiff wrote to Defendant Bauer ("Bauer") and Defendant Immerfall ("Immerfall") the next day about Manthei's conduct. Bauer responded the following day and condoned Manthei's actions. Bauer said that in addition to being sent back to his cell that Plaintiff should have received a conduct report for disobeying orders and for inadequate

work/school performance. *Id.* On January 31, 2019, Plaintiff wrote a grievance regarding him not being on the work schedule since the January 28, 2019 incident. *Id.* Plaintiff received a conduct report the next day from Manthei for refusal to work or attend school. *Id.*

On February 5, 2019, Manthei asked Plaintiff to search inside the garbage on the dock for the missing can lid while working. *Id.* Manthei wanted Plaintiff to find a big lid that was not accounted for. *Id.* at 5. Plaintiff started towards the dock but noticed that Manthei was not walking with him. *Id.* Plaintiff asked who was going to verify if the lid wasn't there because it was a security matter. *Id.* Manthei replied with an expletive and said he would do it himself; Plaintiff was sent back to his cell minutes later. *Id.* Plaintiff wrote to Immerfall and Bauer about the incident that day. *Id.* Plaintiff also wrote a grievance regarding Manthei's conduct. *Id.*

On February 7, 2019, Defendant Moon ("Moon") sent back the properly filed grievance as unprocessed and stated, "refusal to cooperate." *Id*. The next day, Plaintiff received a memo from Immerfall that called Plaintiff a liar in a roundabout way and that also approved of Manthei's conduct. *Id.* On February 13, 2019, Plaintiff received a conduct report from Manthei regarding the February 5, 2019 incident. *Id.* On February 14, 2019, Plaintiff filed a grievance against Moon for a "pattern of staff malfeasance" and also wrote a complaint about Moon to the Division of Adult Institutions Administrator. *Id.* at 6.

On February 15, 2019, Plaintiff sent in an appeal for the #356 conduct report early in the morning. *Id.* Later that day during mail, Plaintiff received a DOC-1408 from Immerfall that removed Plaintiff from his job. *Id.* On February 19, 2019, Plaintiff filed a grievance against Manthei for retaliatory conduct following Plaintiff's previous complaint. *Id.*

On February 18, 2019, Plaintiff received an unprocessed grievance from Defendant Muenchow ("Muenchow") asking Plaintiff to clarify one issue. *Id.* Plaintiff responded that the one issue was "staff malfeasance" and the details were what described the malfeasance. *Id.* On February 20, 2019, Plaintiff received an inmate complaint examiner ("ICE") return letter informing him that the complaint would not be processed by Muenchow. *Id.*

On February 26, 2019, Plaintiff received a decision from Defendant Foster ("Foster") on DOC-91. *Id.* at 7. On March 3, 2019, Plaintiff inquired about the decision on DOC 303.89 through a unilateral appeal. *Id.* The following day, Foster's secretary stated that the appeal paperwork was received on February 18, 2019 (the same day DOC-91 was received) and will be reviewed by the Warden. *Id.*

On March 5, 2019, Plaintiff received correspondence from Defendant Percy ("Percy") about Plaintiff's February 14, 2019 complaint regarding Moon with the Division of Adult Institutions. *Id.* at 6. The letter described the process for if the ICE is part of the affected employee's chain of command; the ICE would abstain from participating in any process initiated as a result of the information obtained through the Inmate Complaint Review System ("ICRS"). *Id.*

On March 11, 2019, Plaintiff received the ICE's recommendation for dismissal of his complaint, reasoning that the scope of the ICRS allows for submissions of complaints regarding disciplinary actions only after the completion of the DOC-303 appeal process. *Id.* at 7. On March 12, 2019, Plaintiff again wrote to Foster about the DOC-303.89 unilateral appeal. *Id.* On March 15, Plaintiff received Foster's decision about the DOC-303.89. *Id.*

On March 18, 2019, Plaintiff filed another grievance about Manthei's conduct. *Id.* On March 19, 2019, Plaintiff received Moon's rejection of the grievance because it was filed beyond the fourteen-day limit. *Id.* On March 26, 2019, Plaintiff appealed that decision to Foster and explained that the grievance should be accepted because the DOC-303.89 decision was made on March 15, 2019. *Id.* On March 28, 2019, Foster rejected the grievance because it was filed beyond the fourteen-day limit. *Id.*

**2.3    Analysis**

The Court finds that Plaintiff can proceed against Manthei on a First Amendment retaliation claim. To prevail on this claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that defendants retaliated against him for filing inmate grievances. It is well established that a prisoner's ability to file complaints is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the second element, he alleges suffering a deprivation from Manthei—receiving a conduct report from Manthei, days after the initial incident, and almost immediately following a grievance against him—that we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (prison transfer likely to deter First Amendment activity). Plaintiff alleges that these actions were done in retaliation for his First Amendment activity of filing grievances. Because of the timing of these events, it is reasonable to draw an inference

that Mathei's conduct report was the result of retaliation. At the pleading stage, the Court therefore finds these allegations sufficient to state a First Amendment retaliation claim against Manthei.

The Court does not, however, find that Plaintiff has sufficiently stated a claim against Bauer, Immerfall, Moon, Muenchow, Percy, and Foster. Plaintiff did not "plead[] factual content that allows the court to draw the reasonable inference" that the defendants retaliated against him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim for retaliation, Plaintiff must plausibly allege that his protected activity was a motivating factor behind the defendants' conduct. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Here, Plaintiff alleges that he filed numerous grievances against prison staff members, and that various negative outcomes later resulted. But, he did not plausibly explain what "led [him] to believe [his] treatment [by these defendants] was because of" the protected activity. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 778 (7th Cir. 2022) (affirming district court's dismissal of amended complaint when it allowed no inference that the defendant engaged in discrimination). If Plaintiff wishes to proceed against these defendants, he may file an amended complaint curing the deficiencies identified in this Order.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claim pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** First Amendment retaliation claim against Manthei.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common

Page 7 of 11
Case 2:22-cv-00066-JPS   Filed 10/18/22   Page 7 of 11   Document 11

Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Defendant should take note that, within forty-five (45) days of service of this Order, he is to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for the complaint to be screened, ECF No. 10, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants Bauer, Immerfall, Moon, Muenchow, Percy, and Foster be and the same are hereby **DISMISSED** from this action for the failure to state a claim against them;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on **Defendant Manthei.**

**IT IS FURTHER ORDERED** that under the informal service agreement, Defendant shall file a responsive pleading to the complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendant raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendant contemplates a motion to dismiss, the parties must meet and confer before the motion is filed.

Defendant should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendant files a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $130.77 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

Page 9 of 11
Case 2:22-cv-00066-JPS    Filed 10/18/22    Page 9 of 11    Document 11

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.