DARRELL ROGERS,

    Plaintiff,

v.                                                Case No. 22-cv-066

CHRISTOPHER MANTHEI,

    Defendant.

# ORDER

    Plaintiff Darrell Rogers, who is representing himself and currently confined at Waupun Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 1.) Rogers was allowed to proceed on a First Amendment retaliation claim against defendant Christopher Manthei for allegedly issuing conduct reports in retaliation for the inmate complaints Rogers filed. Manthei filed a motion for summary judgment. (ECF No. 23.) The motion is fully briefed and ready for a decision. For the reasons stated below, the court grants Manthei's motion for summary judgment.

## PRELIMINARY MATTERS

    Manthei argues that Rogers failed to respond to several of his proposed findings of fact, so the court should deem them undisputed pursuant to Fed. R. Civ. P. 56(e)(2). District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light

most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). Also, in reviewing Rogers's response materials, he appears to have substantially responded to Manthei's proposed findings of fact, (*see* ECF No. 36), and supported his response with a declaration, (*see* ECF No. 38). It also appears that Manthei did not respond to Rogers's proposed findings of fact, (ECF No. 38). Regardless, the court believes it has enough evidence to issue a decision on Manthei's motion for summary judgment.

Manthei also argues that Rogers's response in opposition to his motion for summary judgment was untimely. Rogers's response was due April 10, 2024, but it was not filed until April 16, 2024. The court notes that Rogers's response materials are dated April 10, 2024, and that there was a weekend in between April 10 and April 16. Given the known staffing issues at Waupun, the fact that the response materials were not filed by the institution until a few days later is understandable. The court accepts the late response.

**FACTS**

At all times relevant, Rogers was incarcerated at Waupun, and Manthei was a correctional sergeant at Waupun. (ECF No. 36, ¶ 1.) On January 28, 2019, Rogers was working in his job in the institution's kitchen, when Manthei approached him asking him to clean the staff bathrooms. (ECF No. 37, ¶ 3.) Rogers refused to clean one of the staff bathrooms because it "had feces remnants on the toilet, urine outside of the toilet, women hygienic [products] on top of trash overfilled in garbage and spread on the floor." (*Id.*, ¶ 6.) Because of his refusal to do his job, Manthei had Rogers

2

"change out" and took him back to his cell. (*Id.*, ¶ 7; ECF No. 36, ¶ 9.) Rogers states that cleaning staff bathrooms was not part of his job description as a kitchen worker. (ECF No. 37, ¶ 8.)

On January 31, 2019, Manthei issued Rogers a conduct report for refusal to work. (ECF No. 36, ¶¶ 10-11.) On February 2, 2019, it is undisputed that Rogers received that conduct report. (*Id.*, ¶ 11.) Also on January 31, 2019, Rogers wrote inmate complaint WCI-2019-2447 regarding Manthei's handling of the events of January 28, 2019. (*Id.*, ¶ 13.) The inmate complaint was received by the institution complaint examiner (ICE)'s office on February 1, 2019. (*Id.*, ¶ 15.) Manthei states that he had no knowledge of the inmate complaint when he issued the conduct report. (*Id.*, ¶ 16.) He also asserts that he was not involved in the inmate complaint system, and because inmate complaints are confidential, he generally has no knowledge about inmate complaints. (*Id.*) Rogers states that pursuant to the applicable Department of Corrections (DOC) regulations governing the grievance process, Manthei should have been made aware of the complaint during the investigation process because he should have been interviewed about his involvement in the January 28, 2019, incident. (*Id.*) The grievance itself was dismissed because the inmate complaint concerned matters that were a part of a conduct report proceeding, so the ICE never conducted an investigation. (ECF No. 26-6 at 7.)

On February 5, 2019, Rogers was again working in the kitchen, when he was asked to search garbage bags because there was a can lid not accounted for[1]. (ECF No. 37, ¶ 12.) Manthei asked him to go out onto the dock and look through the garbage bags for the missing lid. (*Id.*) Manthei then followed Rogers to supervise him. (*Id.*) Rogers states that he noticed that Manthei was not going to follow him all the way to the dock, so Rogers asked him who would vouch for him if the lid was not in the bag. (*Id.*) Manthei states that Rogers refused to go through the garbage bags because the lid would not be in there. (ECF No. 36, ¶ 24.) Rogers asserts that there is video that was not preserved that corroborates his facts because the video would show Manthei "belligerently yelling" at Rogers. (*Id.*)

Sometime later that evening, Rogers wrote an informal complaint to non-defendant Lt. Immerfall about his encounter with Manthei in the kitchen that day. (ECF No. 37, ¶ 13.) Rogers also filed an inmate complaint, which on February 7, 2019, the ICE sent back as "unprocessed". (*Id.*, ¶ 14.) Rogers states that in response to his informal complaint, Immerfall told Rogers he discussed the situation with Manthei (*Id.*, ¶ 16.) On February 13, 2019, Manthei wrote conduct report CR #356 regarding Rogers's refusal to work. (ECF No. 36, ¶ 31.) Other than writing the conduct report, Manthei had no role in investigating or deciding the disciplinary action taken. (*Id.*, ¶ 32.)

---

[1] Because can lids pose a security threat if they make their way into the larger prison population, Waupun has a policy that states for every can opened, there must be a corresponding bottom and top lid. (ECF No. 36, ¶¶ 19-21.) If the count is off after several recounts, the lid must be found. (*Id.*)

Also, on February 13, 2019, Immerfall removed Rogers from his kitchen job after reviewing the conduct report as a part of the work placement committee. (ECF No. 36, ¶¶ 35-39.) Manthei states he had no role in the decision to remove Rogers from his position. (*Id.*, ¶ 40.) Rogers contends that Immerfall discussed the conduct report in detail with Manthei. (*Id.*)

In addition to the inmate complaint that was returned unprocessed on February 7, 2019, Rogers submitted two other inmate complaints regarding his removal from his job and the events of February 5 on February 19, 2019, and March 19, 2019, respectively. (ECF No. 36, ¶¶ 33-34.) Manthei states that he was unaware of these inmate complaints. (*Id.*, ¶ 45.) Rogers asserts that through the grievance process, Manthei should have been interviewed about them as part of the investigation. (*Id.*)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Rogers claims that Manthei violated his First Amendment rights because he issued the two conduct reports in retaliation for Rogers filing inmate grievances against him. To demonstrate a retaliation claim, a plaintiff must allege that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). If the plaintiff makes this prima facie showing, the defendants must show that the adverse action would have occurred

6

anyway. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). In other words, if the plaintiff meets all three initial elements of a retaliation claim, the burden of proof shifts to the defendants to show that they would have taken the same actions "even in the absence of protected conduct." *Green v. Dourff*, 660 F.3d 975, 979 (7th Cir. 2011). If the defendants can make this showing, then the plaintiff must demonstrate that their proffered reason was pretextual (*i.e.* a lie) and that the real reason was retaliatory animus. *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

Manthei concedes for the purposes of summary judgment that filing grievances is a protected activity. Manthei argues, however, that Rogers's grievances were not a motivating factor in issuing the conduct reports because Manthei did not know about them.

This is certainly true for the January 28, 2019 incident. The undisputed facts show that Manthei filed his conduct report before the institution received Rogers's inmate complaint. Thus, no reasonable jury could conclude that Manthei knew about the inmate complaint when he issued the conduct report. Rogers argues that Manthei nevertheless would have known about his inmate complaint because he would have been interviewed during the investigation of the grievance pursuant to the DOC's grievance procedures. The grievance, though, was never investigated—instead it was dismissed because there was concurrent investigation of the incident through the conduct report process. So even if the ICE office received Rogers's inmate complaint before Manthei issued the conduct report, Rogers's argument that Manthei would have been made aware of it during the investigation does not apply here, because the

7

inmate complaint was never investigated. Manthei simply could not have retaliated against Rogers when he issued a conduct report in connection with the January 28, 2019, incident.

Turning to the February 5, 2019, incident, Manthei again asserts that he was unaware of the inmate grievance because inmate grievances are confidential. Rogers argues that Manthei was aware of the informal letter complaint he wrote to Immerfall because Immerfall discussed it with Manthei. Rogers also argues that Manthei would have been made aware of the grievance during the investigation process. The inmate grievance was never investigated, though. It was returned unprocessed to Rogers on February 7, 2019. Thus, no reasonable factfinder could conclude that Manthei was aware of the grievance when he issued the second conduct report.

I now turn to the informal letter complaint. At the screening stage, Rogers was allowed only to proceed on a First Amendment Retaliation claim for filing the grievances. (ECF No. 11 at 7.) Rogers is limited to the scope of the screening order, and the informal letter complaint was not one of the alleged protected activities. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013). Even if he had been allowed to proceed on a claim involving the informal letter complaint, and assuming that it is a protected activity, *see Tate v. Jenkins*, Case No. 09-CV-169, 2010 WL 3809765 (E.D. Wis. Sept. 24, 2010), Rogers still has not demonstrated that Manthei would not have issued the conduct report but for the informal letter complaint. Manthei argues that because Manthei refused to supervise

8

him and got angry with him (as deleted video footage supposedly shows), Manthei must have issued the conduct report in retaliation. This, however, is mere speculation on Rogers's part. While a non-movant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion." *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

Regarding the two remaining grievances filed in the middle of February 2019 and March 2019, it is undisputed that those grievances were filed after Manthei drafted the conduct report. As such, no reasonable factfinder could conclude that Manthei issued the second conduct report in retaliation for Rogers's inmate complaints.

Because no reasonable factfinder could conclude that Manthei issued the conduct reports in retaliation, summary judgment is granted in favor of Manthei. In addition, the record demonstrates that Manthei would have acted in the same manner even if he had known about the grievances. The filing of a grievance does not give an inmate *carte blanche* to disobey staff directives and orders. Rodgers never explains why the conduct reports he received were unwarranted, and thus I must conclude that they would have occurred regardless of any grievance Rodgers filed. *Green v. Doruff,* 660 F.3d 975, 977 (7th Cir. 2011).

## CONCLUSION

For the foregoing reasons, the court grants Manthei's motion for summary judgment. Manthei also argued that he was entitled to qualified immunity. Because

the court grants summary judgment in his favor on the merits, the court does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Manthei's motion for summary judgment (ECF No. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 5th day of September, 2024.

STEPHEN DRIES
United States Magistrate Judge